**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Ace of Wingz LLC,

Plaintiff,

v.

Smackin Wings LLC,

Defendant.

No. CV-25-04997-PHX-JZB

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE STEPHEN M. MCNAMEE, UNITED STATES DISTRICT JUDGE**:

Pending before the Court are Plaintiff's "Motion for Default Judgment and for Entry of a Permanent Injunction" ("Motion for Default Judgment") (doc. 41) and "Application for an Award of Attorneys' Fees and Related Non-Taxable Expenses" ("Motion for Attorneys' Fees") (doc. 42). In its Motion for Default Judgment, Plaintiff seeks an entry of default judgment against Defendant for "a forward-looking injunction barring Defendant from using Plaintiff's Marks in its advertising and promotion in the future." (Doc. 41 at 2). In its Motion for Attorneys' Fees, Plaintiff "requests $19,723.50 in attorneys' fees, representing 51.5 hours of billable time, and $427.41 in related non-taxable expenses." (Doc. 42 at 1).

This Report and Recommendation is filed pursuant to General Order 21-25.[1] The

---

[1] General Order 21-25 provides:

> When a United States Magistrate Judge to whom a civil action has been assigned pursuant to Local Rule 3.7(a)(1) considers dismissal to be

Court, finding that jurisdiction is proper, the *Eitel* factors weigh in favor of entry of default judgment, and that the requested relief is well established, **RECOMMENDS GRANTING** Plaintiff's Motion for Default Judgment.

## I. FACTUAL BACKGROUND.[2]

Plaintiff is an Arizona limited liability company operating chicken wing restaurants in the Phoenix metropolitan market. (Doc. 13 at ¶¶ 1, 7.) Plaintiff has used its business name, logo, and branding (the "Marks") continuously and exclusively in commerce since approximately October 2023. (Doc. 13 at ¶¶ 10, 12–14.) Plaintiff's rights arise from actual use in commerce and not from any federal registration. (Doc. 13 at ¶¶ 1, 10.)

Defendant is also an Arizona limited liability company and is a direct competitor of Plaintiff. (Doc. 13 at ¶¶ 2, 18.) The parties target overlapping customers through the same channels of trade, including in person dining and online marketing. (Doc. 13 at ¶ 18.)

Beginning on or about October 22, 2025, Defendant created, published, and distributed commercial video advertisements on Instagram and other social media platforms that incorporated Plaintiff's Marks without authorization. (Doc. 13 at ¶¶ 19–20.) The videos depict Plaintiff's logo being physically beaten, attacked, or humiliated by a character associated with Defendant. (Doc. 13 at ¶ 23.) Defendant allegedly acted with knowledge of Plaintiff's prior use and brand recognition. (Doc. 13 at ¶ 26.) Plaintiff received inquiries, comments, and reactions from consumers evidencing actual confusion and harm to its reputation. (Doc. 13 at ¶ 28.) Defendant has no license or permission to use the Marks. (Doc. 13 at ¶ 29.) Plaintiff twice demanded removal in writing and Defendant

---

> appropriate but lacks the jurisdiction to do so under 28 U.S.C. § 636(c)(1) due to incomplete status of election by the parties to consent or not consent to the full authority of the Magistrate Judge,
>
> IT IS ORDERED that the Magistrate Judge will prepare a Report and Recommendation for the Chief United States District Judge or designee.
>
> IT IS FURTHER ORDERED designating [Senior United States District Judge McNamee] to review and, if deemed suitable, to sign the order of dismissal . . . .

[2] The factual background of this action largely mirrors that of Plaintiff's Motion for Default Judgment. (Doc. 41 at 3–4). This is because Defendant has not submitted its statement of facts.

refused. (Doc. 13 at ¶ 31.)

Plaintiff provided video frame captures from five of Defendant's advertisements to represent the nature of the infringement. (Doc. 41-2.) Each capture shows Plaintiff's Marks superimposed on a figure within an advertisement that displays Defendant's trade name, telephone number, and street address. (*Id.*) The caption of one advertisement expressly tags Plaintiff's Instagram account and states that Defendant is "still SMACKIN the competition," and warns that Defendant's product "may cause . . . sudden disrespect for other restaurants." (*Id.*) The posts carried hundreds of likes, comments, and shares. (*Id.*)

Plaintiff learned on or about July 22, 2026, that Defendant had removed the infringing content from its Instagram accounts, which operate under the usernames "smackinwings" and "smackinwingspeoria," and from TikTok. (Doc. 41 at 4).

## II. PROCEDURAL BACKGROUND.

Plaintiff initiated this action on December 31, 2025, when it filed its seven-page Complaint. (Doc. 1.) The Complaint is composed of two counts, both of which apply to Defendant. (*Id.*) Those counts remain consistent in Plaintiff's First Amended Complaint. (Doc. 13.) The counts include: (1) Trademark Infringement, False Designation or Origin, and Unfair Competition Under 15 U.S.C. § 1125) and (2) Trademark Infringement and Unfair Competition Under Arizona Law. (*Id.* at 5–6.)

On January 27, 2026, a registered private process server personally served Defendant's statutory agent, Deron Green, with the Summons, First Amended Complaint, and the Civil Cover Sheet at 1430 North 32nd Street, Phoenix, Arizona 85008. (Doc. 32.) Defendant's response was due 21 days later under Rule 12(a)(1)(A)(i). (Doc. 24.)

Defendant filed neither answers nor motions under Rule 12. Plaintiff applied for entry of default on March 16, 2026. (Doc. 25) The Clerk entered default against Defendant on March 19, 2026. (Doc. 26.) Defendant's principal was personally served and the process server's Certificate of Service was filed on April 2, 2026. (Doc. 32.) Defendant's principal thereafter attempted to file papers on the company's behalf without counsel. (Doc. 35.) The Court granted Plaintiff's first motion to strike on March 26, 2026, (doc. 29) and granted a

second motion to strike on April 9, 2026. (Doc. 34.) The Court also extended time, sua sponte, for Defendant to retain counsel. (Doc. 36.) Defendant has neither retained counsel nor appeared through counsel.

## III. MOTION FOR DEFAULT JUDGMENT.

The Court will first address whether entry of default judgment against Defendant is warranted.

### A. Legal Standards.

Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of default, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *see also Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Court's "starting point is the general rule that default judgments are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering default judgment against a party that "failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A default judgment entered by a district court devoid of personal or subject matter jurisdiction is void. *Id.* A court has personal jurisdiction over a party where that party has sufficient "minimum contacts" with the territory "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A court has federal-question subject matter jurisdiction where, "on the face of the plaintiff's properly pleaded complaint," the civil action in question "aris[es] under the Constitution, laws, or treaties of the United States." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 392 n.6 (1987); 28 U.S.C. § 1331.

After personal and subject matter jurisdiction have been established, the Court must consider whether default judgment is proper under the *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72 (9th Cir. 1986). The *Eitel* factors are:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.*

In applying the *Eitel* factors, courts have previously noted that, "for default judgment purposes[,] . . . 'well-pled allegations in the complaint regarding liability are deemed true.'" *Ariz. Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 815 (D. Ariz. 2021), *aff'd sub nom. Arizona Bd. of Regents for and on behalf of Arizona State U. v. Doe*, No. 21-16525, 2022 WL 1514649 (9th Cir. May 13, 2022) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)).

**B. Discussion**.

The Court will proceed as follows. First, the Court will analyze whether it has proper jurisdiction over this matter. Second, the Court will analyze whether default judgment is proper under the *Eitel* factors.

1. Jurisdiction.

For the following reasons, the Court finds that: (1) subject-matter jurisdiction is proper; (2) it has personal jurisdiction over Defendant; and (3) venue is proper.

*a. Subject-Matter Jurisdiction*.

In its Complaint, Plaintiff asserts that this Court has original jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 for claims arising under the Lanham Act, and supplemental jurisdiction under 28 U.S.C. § 1367 for related state-law claims. (Doc. 13 at 2). Both 28 U.S.C. § 1331 and 28 U.S.C. § 1338 convey federal question jurisdiction.[3] Because the court has federal question jurisdiction, and Plaintiff's state law claims[4] are "so related to claims in the action within such original jurisdiction that they

---

[3] *See infra* section III.B.2.b.i.
[4] *See infra* section III.B.2.b.ii.

form part of the same case or controversy[,]" the Court has supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(a); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) (citation omitted).

*b. Personal Jurisdiction.*

The next issue is whether the Court has personal jurisdiction over Defendant. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona state law permits the exercise of personal jurisdiction over parties "to the extent permitted under the United States Constitution." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citing Ariz. R. Civ. P. 4.2(a)). "Therefore, the determination whether the District Court had personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Morrill*, 873 F.3d at 1141. The Due Process Clause requires that, for a Court to exercise personal jurisdiction over a defendant, that defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (cleaned up).

There are two categories of personal jurisdiction, namely, general and specific. *Freestream Aircraft (Bermuda) Ltd. v. Aero Ltd. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Plaintiff alleges that the Court has personal jurisdiction over Defendant without specifying whether such jurisdiction is general or specific. (Doc. 13 at 2.) Plaintiff asserts that this Court "has personal jurisdiction over Defendant because Defendant's principal place of business is in Phoenix, Arizona, and Defendant has committed acts of trademark infringement and unfair competition in Arizona." (Doc. 13 at 2.) Plaintiff therefore implies that the Court has general personal jurisdiction over Defendant.

"General jurisdiction exists when the defendant's contacts with the forum state are so continuous and systematic as to render the defendant essentially at home in that forum." *Freestream Aircraft*, 905 F.3d at 602 n.2 (9th Cir. 2018); *see Daimler AG*, 571 U.S. at 137 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place

of incorporation and principal place of business.”). Here, Defendant is an Arizona limited liability company with its principal place of business in Arizona. (Doc. 13 at ¶ 2.)

Crucially, when analyzing personal jurisdiction, a court must find that service was effected. *See Sherrill v. Ariz. Health Care Cost Containment Sys.*, No. CV-13-195-TUC-JGZ, 2013 WL 12122671 (D. Ariz. Apr. 24, 2013) (“A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4.”) (citation omitted); *see also S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (stating that the service of process is the “mechanism” by which the court acquires “the power to enforce a judgment against the defendant’s person or property”).

Here, a registered private process server personally served Defendant’s statutory agent, Mr. Green, with the Summons, the First Amended Complaint, and the Civil Cover Sheet on January 27, 2026, at 1430 North 32nd Street, Phoenix, Arizona 85008. (Doc. 32.) The Court finds that this a valid service upon “an agent authorized by appointment[.]” Fed. R. Civ. P. 4(e)(2)(C).

Under the Second Restatement of Agency, “[a]uthority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal’s manifestations of consent to [them].” Restatement (Second) of Agency § 7 (A.L.I. 1958). “Manifestation of consent” amounts to “conduct from which, in light of the circumstances, it is reasonable for another to infer consent” to be one’s agent. *Id.* cmt. b. Service on a corporation can be achieved by personal service on an officer, a managing or general partner, or any agent authorized by appointment of law to receive service of process. Fed. R. Civ. P. 4(h)(1)(B); Cal. Corp. Code § 17701.16(b) (stating that personal service on an LLC’s designated agent constitutes valid and effective service of the LLC). Mr. Green is Defendant corporation’s owner and thus authorized to receive service of process. Mr. Green requested an extension of time to secure legal counsel in this matter on April 21, 2026. (Doc. 35.) This Court notified Mr. Green of its finding of a good cause to grant a one-month extension of time to obtain counsel. (Doc. 36.) Accordingly, the Court finds that personal jurisdiction is proper in this case.

*c. Venue.*

Venue is proper in the present case. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." quoting 28 U.S.C. § 1391(b)(1). "Additionally, "[v]enue is proper in any district 'in which a substantial part of the events or omissions giving rise to the claim occurred.'" *Noodles Dev., LP v. Hui*, No. CV-12-01165-PHX-ROS, 2013 WL 12111103, at *6 (D. Ariz. July 22, 2013) (quoting 28 U.S.C. § 1391(b)(2)). Because both parties are corporations incorporated in and with their principal places of business in Arizona, and a substantial part of the events in this action occurred in Arizona, venue is satisfied.

2. Default Judgment.

Finding that jurisdiction and venue are proper in this case, the Court will accordingly analyze whether the seven *Eitel* factors favor granting default judgment.

*a. The Possibility of Prejudice to the Plaintiff.*

The first factor favors granting Plaintiff's motion for default judgment because Plaintiff will be prejudiced if default judgment is not entered. Defendant "has refused two written demands, ignored a federal complaint, and twice disregarded this Court's rulings regarding representation." (Doc. 41 at 6.) Plaintiff asserts that "[t]here is no other forum and no other mechanism through which Plaintiff can obtain relief." (*Id.*) Indeed, default judgment is appropriate where, "[i]f Plaintiff's motion for default judgment is not granted, Plaintiff 'will likely be without other recourse for recovery.'" *United States v. $86,496.00 in U.S. Currency*, 2008 WL 2687141, at *2 (D. Ariz. 2008) (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor thus favors Plaintiff.

*b. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint.*

The second and third *Eitel* factors are often analyzed together and "require courts to consider whether a plaintiff has stated a claim on which it may recover." *Ent. USA Inc. v. Baldinsky*, No. CV-22-00970-PHX-DWL, 2023 WL 8185673, at *3 (D. Ariz. Nov. 27, 2023) (citation omitted). A claim is plausible when it is brought under a cognizable legal

theory and the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a plaintiff's complaint states a claim on which it may recover, the second and third factors "weigh in favor of default judgment." *Joe Hand Promotions Inc. v. Alvarez*, No. CV-23-01924-PHX-DJH, 2025 WL 1707915, at *2 (D. Ariz. June 18, 2025) (citing *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010)). The court must accept the allegations of the complaint as true when applying the *Eitel* factors. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Plaintiff asserts the following two claims against Defendant: (i) Trademark Infringement, False Designation or Origin, and Unfair Competition Under 15 U.S.C. § 1125(a); and (ii) Trademark Infringement and Unfair Competition Under Arizona Law. (Doc. 13 at 5–6.) The Court will address each claim in turn.

*i. Count I: Trademark Infringement, False Designation or Origin, and Unfair Competition Under 15 U.S.C. § 1125(a)*

This District has previously held that "federal trademark infringement claims under 15 U.S.C. § 1114 and unfair competition and false designation of origin claims under 15 U.S.C. § 1125(a) are subject to the same legal standards." *DriveTime Sales & Fin. Co. LLC v. Drive Time Auto Sales LLC*, No. CV-26-00190-PHX-MTL, 2026 U.S. Dist. LEXIS 164549, at *5 (D. Ariz. July 24, 2026) (citing *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 622 (9th Cir. 2017). As such, the Court will analyze this claim in its entirety under the legal standard for federal trademark infringement.

To prove trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must show it has "a protectible ownership interest in the mark," and that the defendant's "use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 718 (9th Cir. 2024). The second and third *Eitel* factors support an entry of default judgment on Plaintiff's federal Trademark

Infringement, False Designation or Origin, and Unfair Competition claim because Plaintiff owned a protectible interest in their Marks and Defendant's use of the Marks was likely to result in consumer confusion.

First, Plaintiffs have a protectible ownership interest in the Marks. Both registered and unregistered trade names and trademarks are protected under the Lanham Act. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225–26 (9th Cir. 2008). While federal registration is *prima facie* evidence of the mark's validity and the registrant's right to use the mark in commerce, "the true test of ownership is actual use and priority of use." *Navajo Cnty. Sheriff's Posse Inc. v. Navajo Cnty. Hashknife Sheriff's Posse Search & Rescue*, No. CV-24-08146-PCT-DJH, 2025 U.S. Dist. LEXIS 5900, at *7 (D. Ariz. Jan. 13, 2025) (first citing *Sengoku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir. 1996); then citing *Quiksilver, Inc., v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006)).

Here, neither party owns a federally registered trademark to these Marks. (Doc. 41.) Plaintiffs do allege continuous, exclusive use in commerce since October 2023, two years before Defendant's conduct began, and allege that consumers in the Phoenix market associate the Marks exclusively with Plaintiff. (Doc. 13 at ¶¶ 12–15.) Plaintiff concedes that a contested case could present a genuine question whether Defendant's referential use of the Marks is protected as nominative fair use because, by showing that it used the mark in commerce first, a non-registrant corporation can rebut the presumption that a registered trademark provides. (Doc. 41 at 7) (citing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)); *see also Sengoku Works*, 96 F.3d at 1220. Still, Plaintiff acknowledges that this defense is not before the Court because Defendant failed to appear and did not raise it. (Doc. 41 at 7) (citing *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) ("A defendant asserting nominative fair use need only show that it used the mark to refer to the trademarked good, after which "[t]he burden then reverts to the plaintiff to show a likelihood of confusion.")). Because Defendant has made no showing nor appearance, Plaintiff's allegations control. *See Geddes.*, 559 F.2d at 560 (stating that the court must accept the allegations of the Complaint as true when applying

the *Eitel* factors). Plaintiffs therefore hold a protectable interest in the Marks' use.

Second, Defendant's use of the Marks is likely to cause consumer confusion. In the Ninth Circuit, the "consumer confusion" prong is determined by weighing the enumerated factors set forth in *AMF Inc. v. Sleekcraft Boats*:

> 1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. Defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines.

*AMF Inc. v. Sleekcraft Boats* 599 F.2d 341, 348–49 (9th Cir. 1979*), abrogated in part on other grounds by Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 810 (9th Cir. 2003).

Plaintiffs have made sufficient allegations that Defendant's use of the Marks is likely to cause and has caused consumer confusion. Plaintiff alleges evidence of the fourth *Sleekcraft* factor, asserting that it "has received inquiries, comments, or reactions from consumers *evidencing actual confusion* and harm to its brand reputation as a result of Defendant's infringing and disparaging conduct." (Doc. 13 at ¶ 28) (emphasis added). As to the fifth *Sleekcraft* factor, Plaintiff alleges that "Defendant's conduct is likely to cause confusion, mistake, or deception as to affiliation, sponsorship, or approval with respect to the Marks because Plaintiff's use of the Marks predates Defendant's conduct and the parties *operate in the same market and channels of trade*." (*Id.* at ¶ 30) (emphasis added). Finally, in accordance with the seventh *Sleekcraft* factor, Plaintiff alleges that "Defendant acted with knowledge of Plaintiff's prior use and with intent to trade on Plaintiff's goodwill" and "Defendant acted willfully and in bad faith . . . with knowledge of Plaintiff's prior use and brand recognition." (*Id.* at ¶ ¶ 26, 31.)

Because the Court accepts these allegations as true, the Court finds that Plaintiff owned a protectible interest in their Marks and Defendant's use of such Marks is likely to cause consumer confusion. Therefore, Plaintiffs have "stated a claim on which [they] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). Thus, the second and third *Eitel* factors support an entry of default

judgment on Plaintiff's federal Trademark Infringement, False Designation or Origin, and Unfair Competition claim.

*ii. Count II: Trademark Infringement and Unfair Competition Under AZ Law*

"Arizona common law trademark infringement and unfair competition claims" are "subject to the same legal standards" as federal trademark infringement, unfair competition, and false designation of origin claims. *AAA Alarm & Sec. Inc. v. A3 Smart Home LP*, CV-21-00321-PHX-GMS, 2021 U.S. Dist. LEXIS 163919, at *2 (D. Ariz. Aug. 30, 2021). As such, Arizona common law trademark claims are addressed under the framework of federal law. *Id.* at *4. Thus, as established above[5], the second and third *Eitel* factors support an entry of default judgment on Plaintiff's claim of Trademark Infringement and Unfair Competition under Arizona Law.

*c. The Sum of Money at Stake is Modest.*

As to the fourth *Eitel* actor, Plaintiff seeks no monetary damages. Instead, Plaintiff requests injunctive relief, attorneys' fees, and related non-taxable expenses supported by contemporaneous billing records. Considering the seriousness of the allegations and the need to deter such behavior in the future, the amount at stake is not excessive. *See HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 941 (D. Ariz. 2013); *see also Matter of Redondo Special, LLC*, 2022 U.S. Dist. LEXIS 156454, at *4 (D. Ariz. Aug. 29, 2022) (finding that the fourth *Eitel* factor weighs in favor of entry of default judgment where "no sum of money is currently at stake because plaintiff-in-limitation is not seeking monetary damages"). This factor therefore favors default judgment.

*d. There is No Possibility of a Dispute Concerning Material Facts; The Default was Not the Result of Excusable Neglect; and The Policy Favoring Decisions on the Merits Does Not Bar Relief.*

Where the Defendant has not participated in the litigation, the "fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-

5 *See supra* section II.B.2.b.i.

02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020). As the *Zekelman* court noted:

> The fifth and sixth factors weigh in favor of default judgment or are neutral. Due to Defendants' failure to participate, there is no dispute over material facts (except as to damages) and no indication that default is due to excusable neglect.
>
> The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive."

*Id*. at *4 (quoting *PepsiCo*, 238 F. Supp. 2d at 1177).

Because there is no dispute over material facts due to Defendant's default, and because there is no indication that default is due to excusable neglect as Defendant was served, the Court finds that the fifth and sixth *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment. Finally, although courts generally disfavor default judgment, the seventh factor is insufficient to wholly preclude Plaintiff from receiving such relief when the other *Eitel* factors weigh in its favor.

### C. Conclusion.

Having determined that subject-matter jurisdiction, personal jurisdiction, and venue are proper in the current action, and finding that the *Eitel* factors weigh in favor of entering default judgment against the Defendants, the Court **RECOMMENDS** Plaintiff's Motion for Entry of Default Judgment Against Defendants be **GRANTED**.

## IV. REQUEST FOR INJUNCTIVE RELIEF.

Plaintiff also seeks "preliminary and permanent injunctive relief enjoining Defendant, its officers, agents, servants, employees, and all persons acting in concert or participation with Defendant, from using Plaintiff's trademarks, trade names, logos, or any confusingly similar marks in any advertising, promotion, or commercial activity." (Doc. 13 at 7.)

//

**A. Legal Standards**.

Where the Court determines that a permanent injunction is appropriate in its final judgment, the preliminary injunction merges into the final decree. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Los Angeles*, 979 F.2d 1338, 1340 n.1 (9th Cir. 1992) ("Once an order of permanent injunction is entered, the preliminary injunction merges with it and appeal may be had only from the order of permanent injunction."). As such, the Court will first analyze whether a permanent injunction is appropriate.

The Lanham Act "gives the court power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation of a mark holder's rights." *Athene Annuity & Life Co. v. Athene Grp. Ltd.*, No. CV-24-01120-PHX-JZB, 2025 U.S. Dist. LEXIS 165062, at *24 (D. Ariz. July 18, 2025) (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177). A plaintiff seeking a permanent injunction must satisfy a four-factor test demonstrating:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Oppenheimer & Co. Inc. v. Mitchell*, 135 F.4th 837, 850 (9th Cir. 2025).

**B. Discussion**.

The Court finds that these factors weigh in Plaintiffs' favor. As such, Plaintiff's request for a preliminary injunction merges with the analysis of the permanent injunction.

1. <u>The Four Factors of the Lanham Act Favor a Permanent Injunction</u>.

As to the first factor, the Lanham Act establishes that "[a] plaintiff seeking any injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation" of specific portions of the Lanham Act. 15 U.S.C. § 1116(a). "By its terms, the presumption only applies upon a finding of likelihood of success." *Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1150

(S.D. Cal. 2021) (cleaned up). Here, as explored above, it is likely that Plaintiff would succeed on the merits of its two claims because Plaintiff proved (1) a protectable interest in the use of the Marks and (2) that Defendant's use of the Marks would likely result in consumer confusion. Therefore, Plaintiffs have "stated a claim on which [they] may recover." *Vietnam Reform Party*, 416 F. Supp. 3d at 962. Because Defendant has not appeared to rebut this presumption of irreparable harm, this factor favors granting injunctive relief.

Second, "[i]njunctive relief is the preferred remedy in trademark cases because 'there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.'" *HTS, Inc.*, 954 F. Supp. 2d at 960 (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988)). Plaintiff similarly asserts that "loss of control over a mark and injury to goodwill and reputation are not readily quantified and are not compensable by damages." (Doc. 41 at 8.) This District has previously held that injunctive relief is recommended when defendants fail to participate after being served. *See Athene Annuity & Life Co.*, 2025 U.S. Dist. LEXIS 165062, at *26 ("Given Defendants' pattern of evasive conduct, the Court is convinced that monetary damages alone are insufficient to prevent Defendants' continuous infringing of Plaintiffs' marks."). This factor thus favors granting injunctive relief.

Third, Plaintiff argues that Defendant would suffer no cognizable hardship from the requested injunction. "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) (cleaned up). This Court has similarly reasoned that "[w]ith the prospect of injunctive relief, the only harm Defendants are exposed to is the inability to profit from infringing activities." *Athene Annuity & Life Co.*, 2025 U.S. Dist. LEXIS 165062, at *1. This factor also favors granting injunctive relief.

Lastly, injunctive relief is in the public interest as "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties W., Inc. v.*

*Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009). Plaintiff's reports of inquiries, comments, and reactions from consumers evidencing actual support a finding that consumers clearly benefit from the injunctive relief Plaintiff seeks. (Doc. 41 at 3.)

2. Ninth Circuit's Factors for Permanent Injunction Favor Plaintiff's Request.

A district court cannot issue an injunction unless the moving party proves to the court that relief is needed because "there exists some cognizable danger of recurrent violation." *PH4 Corp. v. Sun City Real Estate, LLC*, No. CV 08-0501-PHX-SMM, 2008 U.S. Dist. LEXIS 100201, at *5 (D. Ariz. Dec. 1, 2008) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Fed.R.Civ.P. 65(d) "does not require the district court to make an explicit finding that future violations are likely, but the district court must at least make explicit findings from which a finding of *a likelihood of future violations could be inferred*." *Id.* at *6 (emphasis added). When finding a likelihood of future violations, the court looks to the totality of the circumstances. *See S.E.C. v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Factors that a district court may consider in making this finding include:

> 1) the degree of scienter involved; 2) the isolated or recurrent nature of the infraction; 3) the defendant's recognition of the wrongful nature of his conduct; 4) the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and 5) the sincerity of any assurances against future violations.

*United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854–55 (9th Cir. 1995) (citing *Furgatch*, 869 F.2d at 1263 n. 5).

Here, with regards to factors one and three, Plaintiff asserts that Defendant "acted with knowledge of Plaintiff's prior use and with intent to trade on Plaintiff's goodwill." (Doc. 41 at 3.) Plaintiff also asserts that "Defendant was personally served through its statutory agent and had knowledge of this action," and that Defendant's "principal members filed papers/leadings, received two orders striking them, and received an extension of time to retain counsel" and respond appropriately. (*Id.* at 7.)

With regard to factors two and five, Plaintiff alleges that Defendant's apparent

removal of the infringing content from social media does not defeat Plaintiff's requested injunction. (Doc. 41 at 9.) "A defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). A case might become moot only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," and that "heavy burden of persua[ding]" the court lies with the party asserting mootness. *Id.* This reasoning relies on the goal that a trademark plaintiff is "entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor." *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924). Here, despite removing the infringing content, Defendant's failure to respond to the Complaint proves that there have been no assurances against future violations. (*Id.* at 4.)

There is no evidence regarding the fourth factor of Defendant's personal and professional characteristics. After assessing the totality of the circumstances, this Court finds that "there exists some cognizable danger of recurrent violation." *PH4 Corp.*, 2008 U.S. Dist. LEXIS 100201, at *9 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

3. <u>Scope of Injunctive Relief</u>.

Injunctive relief is a "precise tool to fix a precise injury," and "should be 'narrowly tailored' to remedy the specific harm a plaintiff has identified 'rather than to enjoin all possible breaches of the law.'" *Facebook, Inc. v. Onlinenic Inc.*, No. 19-cv-07071-SI (SVK), 2022 U.S. Dist. LEXIS 113060, at *17 (N.D. Cal. Mar. 28, 2022) (quoting *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)). Rule 65(d) requires courts to state the terms of the injunction specifically and to "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *Id.* (citing Fed. R. Civ. P. 65(d)(1)(B)–(C)). For an injunction against trademark infringement to be enforceable, it must "identify the [marks or trade dress] with sufficient specificity" to

provide defendants with "fair notice" of its requirements. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1133 (9th Cir. 2006).

Plaintiff's First Amended Complaint details a request for "preliminary and permanent injunctive relief enjoining Defendant, its officers, agents, servants, employees, and all persons acting in concert or participation with Defendant, from using Plaintiff's trademarks, trade names, logos, or any confusingly similar marks in any advertising, promotion, or commercial activity." (Doc. 13 at 7.) Plaintiff's Motion "asks for a forward-looking injunction barring Defendant from using Plaintiff's Marks in its advertising and promotion in the future." (Doc. 41 at 2.) This request does not comply with the requirements of the Federal Rules of Civil Procedure.

*i. Specificity.*

First, Plaintiff fails to "clearly identif[y] and describe[e]" with specificity the elements of the Marks that will be protected by the injunction, in a manner that "should be understood by the lay person, who is the target of the injunction."[6] *Reno Air Racing Ass'n.*, 452 F.3d at 1133–34. If an "injunction does not clearly describe prohibited or required conduct, it is not enforceable." *Id.*; *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996).

In *Reno*, the court held that Plaintiff did not identify and describe the elements of the Marks at issue with the requisite specificity necessary to grant an injunction. *Reno Air Racing Ass'n.*, 452 F.3d at 1133. Plaintiff's attachment "simply contained a copy of a t-shirt design sold by McCord" that included terms such as "Reno, Nevada" and a picture of two airplanes next to a checkered pylon. *Id.* The court reasoned that "[l]ooking at this t-shirt design, one is hard pressed to know what trademarks are referenced." *Id.* Specifically, the court questioned whether the Marks at issue include the "design as a whole," "all of the words depicted" or merely a few, "the checkered pylon, one or more airplanes, the pylon plus one or more airplanes, or some other combination." *Id.* ("Nothing in Exhibit F

---

6 The Ninth Circuit "has not taken a rigid approach to rule 65(d)." *See Davis v. San Francisco*, 890 F.2d 1438, 1450 (9th Cir. 1989) (citing *Henry Hope X-Ray Products, Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336, 1343 (9th Cir. 1982)); *see also United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir. 1985) ("Injunctions are not set aside under rule 65(d) . . . unless they are so vague that they have no reasonably specific meaning.").

identified what trademarks were contained in Exhibit F."). Therefore, even when a plaintiff attaches images of its alleged Marks as an exhibit, a court will not find the requisite specificity unless those Marks are specifically identified in the image, in whole or in part.

Here, Plaintiff similarly identifies its Marks in Exhibit A but fails to identify specific terms or distinctive elements that Plaintiff specifically seeks to protect. (Doc. 41-2) (depicting photographs of Plaintiff's primary logo and trade dress, and Plaintiff's logo as it appears in social media advertising). This attachment mirrors the deficiency of the attachment in *Reno*. Plaintiff's Exhibit A allegedly contains Plaintiff's primary logo and trade dress, depicting a logo that includes an artistic illustration of the owner Abion Acoy's face, alongside the terms "New York Style" and "Ace of Wingz," above a black or red spade suit emblem. (*Id.*) Plaintiff fails to identify whether it identifies the Marks at issue as this design as a whole, merely its trade name or the words depicted, the artistic illustration of its owner's face, the spade emblem, or any combination of these factors. Because Plaintiff's trademarks remain unregistered, this lack of specificity is exacerbated. Thus, the Court is unable to discern which aspects of Plaintiff's Exhibit A make up the trademark that Plaintiff referenced.

Furthermore, Plaintiff broadly requests the Court enjoin Defendant "from using Plaintiff's trademarks, trade names, logos, or any confusingly similar marks." (Doc. 13 at 7.) This phase "any confusingly similar marks" also fails to identify with specificity the elements sought to be protected. *See Reno Air Racing Ass'n.*, 452 F.3d at 1132–34 (concluding that prohibiting the "making, distributing or disposing of items which bear the applicant's trademarks or any confusingly similar variations thereof" was deficient for lack of specificity because it did not clearly identify and describe the trademarks at issue and because of "the ambiguity of the phrase 'confusingly similar variations thereof'") (cleaned up); *see also Scores Holding Co. v. Wash. Mgmt., LLC*, NO. 2:11-CV-00081 GAF, 2011 U.S. Dist. LEXIS 165395, at *19 (C.D. Cal. May 12, 2011) (holding that barring Defendant from "using words that are 'substantially indistinguishable and/or confusing similar either by sight or sound to the word/mark' . . . does not state the proscribed conduct with sufficient

specificity”). Ultimately, although “there are no magic words that automatically run afoul of Rule 65(d), and the inquiry is context-specific,” Plaintiff fails to identify with particularity the specific identification and description of the trademarks it seeks to protect. *Reno Air Racing Ass’n.*, 452 F.3d at 1134.

*ii. Narrowly Tailored.*

Second, Plaintiff also fails to narrowly tailor the requested injunction “to eliminate only the specific harm alleged.” *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 839—40 (9th Cir. 2014) (quoting *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012)). Plaintiff notes that it “has deliberately limited the requested injunction to Defendant’s use of Plaintiff’s Marks in commercial advertising and promotion.” (Doc. 41 at 10.) Plaintiff acknowledges that it “does not ask the Court to prohibit Defendant from criticizing Plaintiff, from comparing the parties’ products, or from commenting on Plaintiff in non-commercial speech” as “[a]n injunction reaching disparaging commentary as such would raise serious First Amendment problems.” (*Id.*) (citing *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1016–17 (9th Cir. 2004)). Plaintiff further clarifies that “[t]he requested relief controls the use of a source identifier, which is the proper office of the Lanham Act, and it does not control Defendant’s potential messaging.” (*Id.*)

This Court disagrees with Plaintiff’s characterization of the requested injunction. The proposed injunction would enjoin Defendant from using Plaintiff’s trademarks and trade dress “in any advertising, promotion, or commercial activity.” (Doc. 13 at 7.) This phrasing is overbroad. *Cf. Angry chickz, Inc. v. Bosphorus Trade, Inc.*, NO. 23-cv-03569-VKD, 2024 U.S. Dist. LEXIS 144348, at *29 (N.D. Cal. July 30, 2024) (stating that Plaintiff’s targeted restriction appropriately aligns with its specific concerns when the “injunction would enjoin defendants from using specifically defined trade dress and trademarks in connection with ‘restaurant services and/or food items,’ which are likely to cause confusion among customers”). Therefore, Plaintiff’s requested injunction does not meet the requisite specificity and narrow tailoring set forth in Rule 65(d)(1).

*iii. Proposed Remedies to Specificity and Tailoring Deficits.*

Where a permanent injunction is permissible to protect an unregistered trademark from infringement, but the Plaintiff fails to request such injunction with the requisite specificity and narrow tailoring set forth in Rule 65(d)(1), courts in this Circuit have acted in one of two ways.

First, the Court may direct Plaintiff to file a supplemental memorandum and any necessary supporting documentation addressing the deficiencies identified. *See Angry Chickz, Inc. v. Bosphorus Trade, Inc.*, NO. 23-cv-03569-VKD, 2024 U.S. Dist. LEXIS 102884, at *31 (N.D. Cal. June 10, 2024) (granting default judgment and directing Plaintiff "to file a supplemental memorandum and any necessary supporting papers addressing the deficiencies identified in this interim order"); *see also Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, NO. C22-0825JLR, 2022 U.S. Dist. LEXIS 164054, at *51 (W.D.Wash. Sept. 12, 2022) ("Having concluded that a preliminary injunction is warranted, the court ORDERS the parties to submit a joint statement, not to exceed ten (10) pages, that includes the parties' position(s) as to: . . . the specific language of the preliminary injunction").

Second, the Court may enter an injunction that is consistent with, but more detailed than, the requested injunction in the Plaintiff's motion. To ensure compliance with Rule 65(d)(1), a district court may clarify the scope of an injunction. *See Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) ("Just as 'courts would not be apt to withhold a clarification in the light of a concrete situation that left parties or 'successors and assigns' in the dark as to their duty toward the court,' the scope of an injunction should be clarified where there is any doubt as to whom it applies") (citing *Regal Knitwear Co. v. National Labor Relations Board*, 324 U.S. 9, 15 (1945)). By clarifying the scope of a previously issued injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). Such clarification may be obtained on motion by a party or made on the court's own motion. *Robinson v. Delicious Vinyl Records, Inc.*, CV 13-

4111-CAS, 2013 U.S. Dist. LEXIS 137940, at *3, *6 (C.D. Cal. Sept.24, 2013) (resolving overbroad and confusing language within the injunction by issuing a revised injunction to which the "Court will add clarifying text" that is "intended to clarify the scope of the injunction"). The Court may also clarify such language when a Plaintiff is entitled to a permanent injunction not yet granted. *See Scores Holding Co.*, 2011 U.S. Dist. LEXIS 165395, at *19 (ordering injunctive relief in the Court's specified terms when "some of the injunctive relief requested . . . runs afoul of this narrow tailoring requirement" and "[o]ther requested relief . . . does not state the proscribed conduct with sufficient specificity"). This Court, prioritizing the preservation of judicial resources and avoiding unnecessary delay, elects to resolve the overboard language within Plaintiff's request by issuing one such revised permanent injunction. *See Robinson*, 2013 U.S. Dist. LEXIS 137940, at *3.

**C. Conclusion**.

Because Plaintiff has suffered an irreparable injury for which remedies available at law are inadequate to compensate, the balance of hardships between proves that a remedy in equity is warranted, and the public interest would not be disserved by a permanent injunction, the Court will **RECOMMEND** that a permanent injunction be **GRANTED WITH MODIFICATION**.

## V. MOTION FOR ATTORNEYS' FEES.

Plaintiff applied for an award of reasonable attorneys' fees and related non-taxable expenses incurred in this action against Defendant. Plaintiff requests $19,723.50 in attorneys' fees, representing 51.5 hours of billable time, and $427.41 in related non-taxable expenses.

**A. Legal Standards.**

Pursuant to Rule 54, a party may move for attorneys' fees and related non-taxable expenses via motion that: (a) is filed within "14 days after the entry of judgment"; (b) specifies the "grounds entitling the movant to the award"; (c) "state[s] the amount sought"; and (d) "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Fed. R. Civ. P. 54(d)(2)(B); LRCiv. 54.2.

**B. Discussion.**

1. Eligibility and Entitlement.

The Lanham Act allows the prevailing party to recover the costs of the action. *OSN Labs, LLC v. Phx. Energy, LLC*, No. CV-23-01188-PHX-MTL, 2024 U.S. Dist. LEXIS 98800, at *4 (D. Ariz. June 4, 2024). Plaintiff asserts that it is the prevailing party under the presumption that the Judgment is to be entered in favor of Plaintiff and against Defendant on Plaintiff's Motion for Default Judgment filed concurrently. (Doc. 42 at 2) (stating that "[a] party who obtains a default judgment is a prevailing party for fee purposes"). The Court agrees that default judgment is to be entered in favor of Plaintiff, so Plaintiff is eligible to recover the costs of the action.

Under the Lanham Act, the Court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. "[A] case may be deemed exceptional, and merit an award of attorneys' fees under the Lanham Act, when the Defendant disregards the proceedings and does not appear." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003). Because Defendant has disregarded these proceedings[7], the Court finds that this is an exceptional case that warrants an award of fees. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (upholding attorneys' fees where default judgment established defendant willfully infringed on plaintiff's trademark.).

2. Reasonableness of the Requested Award.

Having determined that an award of attorneys' fees is warranted, the Court must determine an appropriate award. Plaintiff requests an award of $19,723.50 in attorneys' fees, representing 51.5 hours of billable time, and $427.41 in related non-taxable expenses. (Doc. 42 at 1.). Plaintiff includes in its Motion a spreadsheet of fees and costs billed. (Doc. 42-1.) Plaintiff's requested award of $19,723.50 includes hours billed by the following timekeepers: Patrick T. Nackley, Esq. (PNK), attorney, $495.00 per hour; Devin M. Tarwater, Esq. (DMT), attorney, $450.00 per hour; J. Knop (JK), paralegal, $265.00 per

[7] *See supra* section II.B.2.

hour; Hector Muro, paralegal, $285.00 per hour; and Darius Whitson (LC), law clerk, $225.00 per hour. (*Id.*). Plaintiff states that "[e]very one of these rates falls within the ranges the client agreed to in writing." (Doc. 42 at 9.)

The Court may award only "reasonable" attorney fees. 15 U.S.C. § 1117(a). The reasonableness of the attorney fees is determined based on the "lodestar" calculation, which multiplies (1) "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see Zwicky v. Diamond Resorts Inc.*, No. CV-20-02322-PHX-DJH, 343 F.R.D. 101, at *5 (D. Ariz. Apr. 22, 2024) (applying the Lodestar method) (emphasis added); *see also Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195, 208–11 (D. Mass. 2001) (same); *Meier v. UHS of Del., Inc.*, No. 4:18-CV-615, 2023 U.S. Dist. LEXIS 195066, at *7 (E.D. Tex. Oct. 31, 2023) (same).

The reasonable hourly rate is assessed by "the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). To obtain an award of attorneys' fees and costs, the prevailing party must file a motion for fees and submit evidence in support of the proposed award. *Machowski v. 333 N. Placentia Prop.*, LLC, 38 F.4th 837, 841 (9th Cir. 2022). In determining the reasonably hourly rate, the Court is not guided by the hours charged by the prevailing party's attorney but rather "by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

The number of hours considered in the Lodestar calculus is not limited to those hours spent in preparation for a favorable judgment. Rather, "[i]n statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659–60 (9th Cir. 1985). "[I]n appropriate cases, the district court may judge the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.* . . . that have not been subsumed in the lodestar calculation." *Intel Corp.*

*v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).[8] The factors for awarding attorney's fees under A.R.S. § 12-341.01(A) substantially overlap with those required under federal law. Therefore, the Court evaluates them together. *Compare Carter v. Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014), *with Med. Protective Co. v. Pang*, 25 F. Supp. 3d 1232, 1242 (D. Ariz. 2014).

Here, Plaintiff addresses all factors. The Court will accordingly analyze whether Plaintiff's requested award is proper under the twelve *Kerr* factors.

*i. Customary Fee.*

The Court will first address the fifth *Kerr* factor. Plaintiff asserts that Attorneys PNK and DMT's hourly rates of $495.00 and $450.00, respectively, are reasonable. (Doc. 42 at 8.) The Court agrees. *See ThermoLife Int'l LLC v. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2020 U.S. Dist. LEXIS 60871, at *8 (D. Ariz. Apr. 7, 2020) (finding that hourly rates of $690 for an associate and $890 for a lead partner were reasonable), *aff'd sub nom. ThermoLife Int'l, LLC v. Am. Fitness Wholesalers, L.L.C.*, 831 F. App'x 325 (9th Cir. 2020); *see also OSN Labs,* 2024 U.S. Dist. LEXIS 98800, at *7 (finding that hourly rates of $410, $495, and $745 as reasonable for a trademark infringement case).

Plaintiff further asserts that Paralegals JK and HM's fees of $225 and $285, respectively, are reasonable. (Doc. 42 at 8–9.) The Court agrees. The United States

---

[8] Local Rule 54.2(c) adds an additional factor to the list, namely, "Any other matters deemed appropriate under the circumstances." LRCiv 54.2(c)(3)(M).

Supreme Court has held that paralegal time is recoverable as attorneys' fees. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008) (holding that "paralegal fees are recoverable as attorney's fees at their 'prevailing market rates'"). Several recent cases provide guidance for determining reasonable hourly rates for paralegals in complex disputes. *See Gonzalez v US Human Rights Network*, No. CV-20-00757-PHX-DWL, 2024 U.S. Dist. LEXIS 6586, at *18–20 (D. Ariz. Jan. 12, 2024) (noting that this district has recently "approved hourly rates of $567 for partners, $375.50 for associates, and $265 for paralegals"), *aff'd in part, rev'd in part on other grounds*, 2026 U.S. App. LEXIS 4362 (9th Cir. 2026); *ThermoLife Int'l*, 2020 U.S. Dist. LEXIS 60871, at *8 (finding rates of $890 for the lead partner, $690 for an associate, and $355 for a senior paralegal reasonable in a complex matter). Paralegals JK and HM's rates are therefore reasonable.

Finally, Plaintiff asserts that Law Clerk LC's $225.00 per hour rate is reasonable. The Court is unable to assess whether the rate charged for LC's work is reasonable considering the absence of information about the individual's training and experience. *See Threadgill v. Saddlebrook Invs.*, LLC, 2024 U.S. Dist. LEXIS 146512, at *41 (D. Ariz. Aug. 15, 2024) (denying attorneys' fees for a law clerk where the declaration failed to discuss "how or why $150.00 is reasonable for a law clerk or this particular law clerk"). In the attached exhibits, Plaintiff demonstrates that Medalist Legal PLC regularly charges "$185 to $285 per hour for paralegals and law clerks" (doc. 42-2 at 1) and Nackley Law regularly charges "$150 per hour for any and all services performed by a Legal Assistant." (Doc. 42-3 at 3). Neither of these general statements explains why LC's rate of $225.00 per hour is reasonable. LC's rate of $225.00 per hour also conflicts with the reasonable hourly rate for law clerks in Arizona. *See S.W. Fair Housing Council v. WG Scottsdale LLC*, No. CV-23-01089-PHX-DJH, 2022 U.S. Dist. LEXIS 201451, at *5 (D. Ariz. Nov. 4, 2022) (holding that a reasonable hourly rate for law clerks is $125.00). Without further specific information, undersigned cannot determine a greater hourly rate amount for LC. As such, the Court will adjust LC's fees to $125.00 per hour.

*ii. Time and Labor Required.*

The Court has reviewed the detailed billing records submitted by Plaintiff and finds that the hours and labor expended were substantive, necessary, and reasonable for the successful prosecution of this case. However, the Court will excise several time entries as they are administrative or clerical tasks.

LRCiv 54.2(e)(2) provides that "the party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated." Plaintiff therefore must include, "(A) The date on which the service was performed; (B) The time devoted to each individual unrelated task performed on such day; (C) A description of the service provided; and (D) The identity of the attorney, paralegal, or other person performing such service." LRCiv 54.2(e)(1). The Rule provides examples of sufficient service descriptions, including (1) telephone calls "must identify all participants and the reason for the call"; (2) legal research must "identify the specific legal issue researched and, if appropriate . . . the pleading or document"; and (3) preparation of pleadings and documents must identify the document and "the activities associated with its preparation." LRCiv 54.2(e)(2).

Clerical and secretarial tasks are not recoverable. *See, e.g.*, *Missouri*, 491 U.S. at 288 n. 10 ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012) (holding that "the district court did not abuse its discretion in declining to award . . . attorney's fees for purely clerical tasks"); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that clerical tasks "should have been subsumed in firm overhead rather than billed at [hourly] rates"); *Pearson v. Nat'l Credit Sys. Inc.*, No. CV-10-0526-PHX-MHM, 2010 U.S. Dist. LEXIS 135927, 2010 WL 5146805, at *3 (D. Ariz. Dec. 13, 2010) ("[T]asks which are clerical in nature are not recoverable."). Examples of clerical or secretarial tasks include "filing documents and preparing and serving summons," "filing, transcript, and document organization," and "scheduling, calendaring activities, and bates labeling documents." *See Neil*, 495 F. App'x at 847; *Nadarajah*, 569

F.3d at 921. If a court finds "clerical tasks [were] billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah*, 569 F.3d at 921. Here, counsel's time sheet contains several activities that fall squarely under the administrative or clerical banner. The Court will address errors under each timekeeper individually.

a. Attorney DMT.

Billing 1.2 hours at $450.00 per hour, Attorney DMT's requested fee totals $540.00. (Doc. 42-1.) These hours reflect DMT's collaboration with Attorney PNK, as well as analysis of statutory authority, case law, and deadlines. (*Id.*) Each entry includes the date the work was performed, the individual who performed the work, a description of the work, and the time spent. (*Id.*). No entry exceeds 0.5 hours. *See United States v. Allergan, Inc.*, 2023 U.S. Dist. LEXIS 128732, 2023 WL 4754637, at *5 (C.D. Cal. July 24, 2023) (noting that "[c]ourts in the Ninth Circuit generally reduce entries exceeding one hour").

Attorney DMT seeks compensation for 0.1 hours billed on 1/5/2026 for "[a]nalyz[ing] notices from court regarding trademark form and corporate disclosure requirement." (Doc. 42-1.) Tasks such as "reviewing Court-generated notices . . . are clerical and not compensable." *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010). Examples of clerical or secretarial tasks include "filing documents and preparing and serving summons," "filing, transcript, and document organization," and "scheduling, calendaring activities, and bates labeling documents." *See Neil*, 495 F. App'x at 847; *Nadarajah*, 569 F.3d at 921; *Scottsdale Gas Co. L*, 2021 U.S. Dist. LEXIS 128671, at *5. If a court finds "clerical tasks [were] billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *Nadarajah*, 569 F.3d at 921. As such, this Court will reduce Attorney DMT's time by 0.1 hours.

Additionally, one of Attorney DMT's entries is duplicative. "[F]ee requests must not be duplicative or reflect an excessive amount of time spent on a task." *Southwest Fair Housing Council v. WG Chandler Villas SH LLC*, No. CV-19-00178-TUC-RM, 2023 WL 4421579, at *26 (D. Ariz. July 7, 2023) (quotations and citations omitted). As such, this

Court is tasked with excluding hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). On both 4/02/2026 and 4/03/2026, DMT recorded 0.3 and 0.2 hours, respectively, to first "[r]eview deadlines based on motions filed and confer with Medalist Legal team regarding the same," then "[f]urther review deadlines based on motions filed and confer with Medalist Legal team regarding the same." (Doc. 42-1). This Court will reduce Attorney DMT's time by 0.2 hours at $450.00 per hour to exclude the second, duplicative entry. *See WG Scottsdale LLC*, 2022 U.S. Dist. LEXIS 201451, at n.19 (excluding an entry on 7/22/2021 that the Court determined is duplicative of an entry on 7/14/2021). Attorney DMT's adjusted lodestar amount based on this factor totals $405.00, reflecting 0.9 hours billed.

b. Attorney PNK.

Billing 26.4 hours at $495.00 per hour, Attorney PNK requests $13,068.00 in attorneys' fees. (Doc. 42-1.) Several of Attorney PNK's entries list multiple tasks together, but those tasks generally appear to be related to one another. Additionally, none of these entries exceed 1.80 hours, with only three detailed entries exceeding one hour of work billed. (Doc. 42-1); *see Allergan, Inc.*, 2023 U.S. Dist. LEXIS 128732, at *5 (noting that "[c]ourts in the Ninth Circuit generally reduce entries exceeding one hour" but that "[b]lock-billed entries are permissible where entries contain sufficient specificity for courts to discern whether the time spent performing tasks was reasonable"). Attorney PNK's block-billed entries are detailed and specific, and thus permissible to discern the reasonableness of time spent performing each task.

Clerical and secretarial tasks are not recoverable. *See Pearson*, 2010 U.S. Dist. LEXIS 135927, at *3. Conversely, tasks "involv[ing] some legal skill as well as clerical skill" may be compensable. *Quade ex rel. Quade v. Barnhart*, 570 F. Supp. 2d 1164, 1167 (D. Ariz. 2008). Here, several of Attorney PNK's block-billed entries included a clerical task as well as tasks that involved legal skill. These entries include, "Review and approve cover sheet" at 0.1 hours on 1/08/2026 and "Review email from court regarding receipt of filing cover sheet, labeling in docket" at 0.2 hours on 1/20/2026. The Court will therefore

reduce Attorney PNK's hours by 0.3 hours while preserving the remainder of Attorney PNK's block-billed entries, totaling $148.50 reduced. *See Moon v. Am. Family Mut. Ins.*, No. CV-18-00524-PHX-JAT, 2018 U.S. Dist. LEXIS 131610, at *3 (D. Ariz. Aug. 6, 2018) (noting the court's discretion to reduce block-billed hours to account for non-compensable activities). Therefore, based on this factor, Attorney PNK's adjusted fee amount is $12,919.50.

c. Paralegal JK.

Billing 12.6 hours at $265.00 per hour, Paralegal JK's requested fee totals $3339.00. (Doc. 42-1.) Four of Paralegal JK's entries list multiple tasks together, but those tasks generally appear to be related to one another and thus do not constitute impermissible block-billing practices. *See Allergan, Inc.*, 2023 U.S. Dist. LEXIS 128732, at *5. Additionally, none of these entries exceed 1.20 hours, with only one detailed entry exceeding 1 hour of work billed. (Doc. 42-1.) As such, these entries contain sufficient specificity for courts to discern whether the time spent was reasonable.

Tasks that are clerical in nature are not recoverable as part of a reasonable fee award. *Nadarajah*, 569 F.3d at 921; *Plourde*, 717 F. Supp. 2d at 1099 ("Tasks such as reviewing Court-generated notices, notifying clients of court hearings, filing documents with the Court, communication with court staff, scheduling, and corresponding regarding deadlines, are clerical and not compensable."). After a thorough review of the billing entries, the Court finds that Plaintiff did not properly deduct such clerical entries for Paralegal JK, instead including entries for scheduling, filing, and receiving and reviewing Court-generated notifications. The Court has noted each clerical entry that Plaintiff did not deduct and thereby reduces the billed amount by 0.1 hours per such entry. The Court will therefore reduce Paralegal JK's fees by 1.9 hours, resulting in a lodestar amount of $2,835.50.

d. Paralegal HM.

Billing 3.1 hours at $285.00 per hour, and accounting for a 0.2-hour exclusion, Paralegal HM's fee request totals $883.50. (Doc. 42-1.) Of Paralegal HM's two entries, one represents 3.0 hours billed for multiple tasks listed together. Each of these tasks is

labeled, however, at 1.0 hours billed for each of the three drafts. (*Id.*) This entry is therefore permissible. *See Allergan, Inc.*, 2023 U.S. Dist. LEXIS 128732, at *5.

HM's second entry of 0.1 hours represents "Weekly case status and strategy." (Doc. 42-1.) This entry is vague and should be excluded. *See Schweiger*, 673 P.2d at 932 (stating that entries "must be in sufficient detail to enable the court to assess the reasonableness of the time incurred"). Thus, the lodestar amount for Paralegal HM is $855.00.

e. Law Clerk (LC).

Billing 8.1 hours at $225.00 per hour, LC's requested attorney's fees total $1,822.50. (Doc. 42-1.) Adjusted down to $125.00 per hour as established above[9], LC's adjusted lodestar amount totals $1,012.50 for 8.1 hours billed. These hours reflect LC's drafting of the complaint, a legal memorandum, and the first amended complaint. (*Id.*) Each entry includes the date the work was performed, the individual who performed the work, a description of the work, and the amount of time spent. (*Id.*). While LC's three entries all document between 1.1 and 3.4 hours of work, these entries are permissible as they contain detailed explanations of each related task and the amount of time spent on its performance. (*Id.*); *see Allergan, Inc.*, 2023 U.S. Dist. LEXIS 128732, at *5. As such, this factor does not require further adjustment of LC's lodestar amount.

*iii. Novelty and Difficulty of Questions Involved.*

As to the second factor, because this action resulted in default judgment, there were few—if any—novel or challenging questions incurred. Although it is a trademark infringement case requiring some specialized knowledge, it did not involve novel or complex issues. The case concluded with a default judgment, and the Plaintiff was not required to address any opposing arguments from the Defendant. The additional hours spent by the Plaintiff due to issues with service of process and an unsuccessful settlement were reasonable. This factor is accordingly neutral and does not result in any modification of the Lodestar amount. *See Ubinger v. Urb. Housekeeping LLC*, No. CV-23-01802-PHX-ROS, 2024 U.S. Dist. LEXIS 107759, at *3 (D. Ariz. June 17, 2024) ("This case involved

[9] *See supra* Section III.B.2.i.

a straightforward claim that comes reasonably often before this Court. This factor is neutral.") (cleaned up).

*iv. Skill Requisite; Attorney Experience, Reputation, and Ability.*

The third and ninth factors also do not necessitate an adjustment to the lodestar amount. This "matter required familiarity with the Lanham Act, with Ninth Circuit likelihood of confusion doctrine, with federal default practice, and with the local rules of this District." (Doc. 42 at 6.) This level of skill is equal to that required in any trademark infringement case. Both PNK and DMT are barred attorneys. (Doc. 42-1). Therefore, the level of skill and attorney ability required, although notable, does not necessitate an adjustment to the lodestar amount.

*v. Fixed or Contingent Fee.*

Plaintiff contends that all attorneys worked at a fixed hourly rate. (Doc. 42 at 6.) Such fees were billed on a regular cycle, and Plaintiff has not indicated that a contingency fee arrangement was in place. (*Id.*) Therefore, the sixth factor does not require adjustment of the lodestar amount.

*vi. Time Limitations.*

As to the seventh factor, Plaintiff contends that "[t]he infringing advertisements were circulating while the matter was pending, which required prompt action." (Doc. 42 at 6). Plaintiff concedes that "[n]o unusual limitation otherwise applied." (*Id.*) Accordingly, this factor is of "minimal weight" and does not require an adjustment of the lodestar amount. *See Miles v. Thomas Suites Campus of Care LLC*, No. CV-24-01286-PHX-SMM (JZB), 2025 U.S. Dist. LEXIS 216125, at *10 (D. Ariz. Nov. 3, 2025).

*vii. Amount Involved and Results Obtained.*

Under the eighth factor, no monetary damages were awarded or sought in this case. The Court granted Plaintiff's request for a permanent injunction. Plaintiff "obtained the principal relief it sought." (Doc. 42 at 6.) This factor therefore does not warrant an adjustment to the lodestar amount. *See OSN Labs,* 2024 U.S. Dist. LEXIS 98800, at *9 (reasoning that adjustment to the lodestar amount is not warranted when the Court does not

award damages and does grant Plaintiff's request for a permanent injunction).

*viii. "Undesirability" of the Case and Preclusion of Other Employment.*

As to the tenth factor, Plaintiff does not contend that this case was particularly undesirable for Plaintiff's counsel. The Court agrees. *See OSN Labs,* 2024 U.S. Dist. LEXIS 98800, at *9 (reasoning that modification of the requested fees is unjustified when "supporting documents and arguments do not present any evidence suggesting that this litigation was viewed as notably undesirable or that it carried any exceptional risk or burden"). Plaintiff also does not contend that the fourth factor warrants an enhancement of the lodestar amount. The Court agrees, finding no indication that handling this litigation precluded Plaintiff's attorneys from accepting other employment. Thus, neither factor requires further adjustment of the lodestar amount.

*ix. Nature and Length of Professional Relationship with Client.*

This case has been on the Court's docket since December 31, 2025. Plaintiff's counsel provided no additional evidence of an existing or long-term relationship. As such, the eleventh factor does not necessitate an adjustment to the lodestar amount. *See, e.g.*, *Ubinger v. Urb. Housekeeping LLC*, No. CV-23-01802-PHX-ROS, 2024 U.S. Dist. LEXIS 107759, at *3 (D. Ariz. June 17, 2024) ("[Attorney] has never represented Plaintiff before this case. This factor is neutral.").

*x. Awards in Similar Cases.*

Plaintiff asserts that the requested amount of attorneys' fees is reasonable. (Doc. 42 at 5.) Plaintiff states without evidence that "Judges of this District have awarded Lanham Act fees following default judgments in substantially larger amounts. The amount requested here is modest by comparison and reflects an efficiently litigated matter." (*Id.* at 7.) Considering this District of Arizona's precedent, the Court agrees that this reduced amount of $18,027.50 in attorneys' fees is reasonable. *See, e.g.*, *HTS*, 954 F.Supp. 2d at 935 (awarding attorney's fees and costs in the amount of $27,694.55 following default judgment for trademark infringement, misappropriation of trade secrets, and common law tort claims for breach of fiduciary duty and unfair competition); *DocRx, Inc. v. DocRx*

*Dispense, Inc.*, o. CV-14-00815-PHX-PGR, 2015 U.S. Dist. LEXIS 84851, at *8 (D. Ariz. June 28, 2015) (awarding $29,539.90 in attorneys' fees upon a grant of default judgment and permanent injunction for trademark infringement under the Lanham Act). Therefore, this factor does not require further adjustment to the lodestar amount.

*xi. Other Amounts: Related Non-Taxable and Taxable Expenses.*

Lastly, Plaintiff seeks $410.61 in computerized legal research charges and $16.80 in postage incurred in serving its pre-suit demand letters, for a total of $427.41. (Doc. 42-1.) Plaintiff asserts that the engagement agreements provide expressly that computerized legal research is billed to the client as an expense. (*Id.*) The Ninth Circuit has held that "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'" *Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012); *see Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010*); see also Trs. of the Constr. Indus. & Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006); *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). This Court nonetheless rejects Plaintiff's request for electronic legal research fees in its statement of non-taxable expenses. Plaintiff has only described the electronic research fees as "Westlaw computerized legal research" without attachment of a valid invoice or receipt. (Doc. 42-1.) Because Plaintiff has provided "no way of knowing how those fees were incurred," this Court cannot conclude that they are reasonable. *BBQ Hut, Inc. v. Maelin Enters., LLC*, No. CV-06-2050-PHX-FJM, 2008 U.S. Dist. LEXIS 109698, at *10 (D. Ariz. July 3, 2008) (citing LRCiv 54.2(e)(2)(B)). As such, this Court will only grant the $16.80 entry, recoverable for the service of two demand letters on 12/11/2025. (Doc. 42-1); *see HTS, Inc.*, 954 F. Supp. 2d at 962 (granting a courier service fee as a non-taxable expense).

Finally, Plaintiff seeks relevant taxable costs under a separate Bill of Costs. LRCiv 54.1(e) provides the following regarding taxable costs, in relevant part that "[c]lerk's fees and service fees, including private process servers' fees, are taxable." Fees for admission pro hac vice are not taxable. Plaintiff incurred a filing fee of $405.00 and a private process

server fee of $95.50, totaling $500.50. (Doc. 42-1.) Plaintiff plans to file a Bill of Costs on the Clerk's form within fourteen days after entry of final judgment as LRCiv 54.1(a) requires and does not seek those amounts in this Application. (Doc. 42 at 1) These amounts therefore will not factor into the Court's present reasonableness analysis.

3. Conclusion Based on *Kerr* Reasonableness Factors.

Once a party establishes its entitlement to fees and meets the minimum requirements in its application and affidavit for fees, the burden shifts to the opposing party to demonstrate the unreasonableness of the requested fees. *See Gilbert MH LLC*, No. CV-18-04046-PHX-SPL, 2021 U.S. Dist. LEXIS 224242, at *3 (D. Ariz. Nov. 19, 2021) (quoting *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 491 (Ariz. Ct. App. 2007)). If the opposing party does not make a showing of unreasonableness, or fails to dispute the fees, the requesting party is entitled to full payment. *Id.* Defendant has failed to respond to Plaintiff's attorney fee application and has not challenged Plaintiff's fee submissions. For the foregoing reasons, the Court finds Plaintiff's requested attorneys' fees to be reasonable with modification. Accordingly, the Court **recommends** that the attorneys' fees award be reduced to $18,027.50.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff Ace of Wingz's Motion for Default Judgment against Defendant Smackin Wings (doc. 41) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's proposed injunctive relief (doc. 41) shall be **GRANTED WITH MODIFICATION**. The Court **RECOMMENDS the following** permanent injunction: Defendant Smackin Wings, LLC, and its employees, agents, representatives, officers, attorneys, servants, suppliers, and all persons acting in concert and participation, are restrained and enjoined from: (1) advertising or selling, via the Internet or otherwise, all products bearing Plaintiff's trade name or primary logo, in whole or in part, as it appears in social media advertising (2) in connection with chicken-wing restaurant services and/or food items, or the promotion thereof. Specifically, Defendant is permanently enjoined from using Plaintiff's name, "Ace of Wingz," in any

font. Defendant is further permanently enjoined from using Plaintiff's black or red spade suit emblem, as well as the artistic illustration of the owner Abion Acoy's face in the form shown in the exhibits to the First Amended Complaint (Doc. 41-1). Finally, Defendant, its employees, agents, representatives, officers, attorneys, servants, suppliers, and all persons acting in concert or privity with Defendant, are permanently enjoined from assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Application for an Award of Attorneys' Fees and Related Non-Taxable Expenses (doc. 42) be **GRANTED WITH MODIFICATION** in the amount of $18,027.50 in attorneys' fees and $16.80 in related non-taxable expenses.

**IT IS ORDERED** that the Clerk of Court shall mail a copy of this Report and Recommendation to:

Smackin Wings, LLC
c/o Deron Green
1430 N 32nd Street
Phoenix, AZ, Maricopa, 85008.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have **21 days**[10] from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114,

---

[10] The Court notes that, as a general matter, the Parties are given 14 days to file written objections. However, in light of the service-related issues present in this action, the Court will provide additional time for Plaintiff to object to this Report and Recommendation to ensure fairness in the resolution of this matter. *See* Fed. R. Civ. P. 6(b)(1)(A).

1121 (9th Cir. 2003) (en banc). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 22nd day of October, 2026.

Honorable John Z. Boyle
United States Magistrate Judge